IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KIMBERLY S. CHAVEZ,

    Plaintiff,

v.

    No. 1:16-cv-01376-KRS

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

    Defendant.

## ORDER GRANTING MOTION TO REMAND AND REMANDING MATTER TO AGENCY FOR ADDITIONAL PROCEEDINGS

Plaintiff Kimberly Chavez seeks review of the Social Security Administration's denial of her application for disability insurance benefits.[1] *See* 42 U.S.C. § 423. With the consent of the parties to conduct dispositive proceedings, *see* 28 U.S.C. § 636(c), the Court has reviewed the administrative record and considered Chavez's motion to remand and supporting memorandum, the agency's response in opposition, and Chavez' reply. (*See* Docs. 25, 26, & 29). Having done so, the Court concludes that the Administrate Law Judge ("ALJ") committed reversible error in evaluating whether Chavez's intellectual impairment meets or equals Listing 12.05C and Chavez is, as a result, per se disabled under the Social Security Act. Accordingly, the Court **GRANTS** Chavez's motion and **REMANDS** the matter for additional proceedings.

### I.    BACKGROUND

Chavez alleged disability as of August 5, 2011 at age 27 arising from her intellectual functioning and continuing until December 31, 2016, the date she last qualified for benefits. (AR 13; 15). Following a hearing, ALJ Barry O'Melinn denied Chavez's application for benefits. (AR

---

[1] Chavez also applied for supplemental security income, but abandoned that claim during the administrative hearing. (AR 13).

13-22). At step three of the five-part framework[2] used to evaluate disability, the ALJ concluded that Chavez's borderline intellectual functioning, although a severe impairment, did not meet or equal Listing 12.05C. (AR 17). A finding that this impairment satisfied Listing12.05C would have required an award of benefits for an "intellectual disorder." (*Id*.); 20 C.F.R. part 404, subpt P, app. 1, § 12.05. At step four, the ALJ determined that Chavez retained the residual functional capacity ("RFC") to perform her past work as a cook's helper. (AR 21). Since Chavez was capable of performing this job, the ALJ did not proceed to step five of the sequential process. (AR 21-22). The ALJ's adverse determination became the agency's final action when the Appeals Council denied review on November 9, 2016. (AR 1-7).

## II. STANDARD OF REVIEW

This Court reviews the ALJ's decision to determine whether it is supported by substantial evidence and the ALJ applied the correct legal standards. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). If substantial evidence supports the conclusion that the plaintiff is not disabled and the ALJ followed the law, the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). The term "substantial evidence" means that which "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1118 (citation and internal quotation marks omitted). Even if the Court could reach the opposite conclusion, the decision must stand if the record as a whole is not "overwhelmed by other

---

[2]The five-part sequential analysis is used to determine disability where, as here, a plaintiff's application has been denied both initially and on reconsideration. *See* 20 C.F.R. §§ 416.920(a)(4)(i) – (iv); 404.1520(a)(4)(i)-(v). The framework asks whether the plaintiff (1) has engaged in "substantial gainful activity" (Step 1); (2) has a "severe medically determinable . . . impairment . . . or a combination of impairments" that either has lasted or is expected to last at least one year (Step 2); (3) has impairments that meet or equal one of the presumptively disabling impairments the agency has listed (Step 3); (4) is unable to perform her "past relevant work" (Step 4); and (5) retains the residual functional capacity to perform work in the national economy in light of her age, education, and work experience (Step 5). *Id.* The parties do not challenge the ALJ's determination that Chavez has not engaged in substantial gainful activity since his onset date and that she suffers from a severe impairment at steps one and two respectively. For the sake of brevity, the Court does not further recount the analytic framework.

evidence" to the contrary or unless a "mere scintilla" supports it. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).

### III. ANALYSIS

Chavez makes three arguments in support of remand: (1) the ALJ erred at step three in concluding that Chavez's intellectual functioning did not meet or equal Listing 12.05C; (2) the ALJ improperly evaluated the opinions of consulting psychologist, Mary Loescher, Ph.D., and the state agency doctors in fashioning Chavez's RFC; and (3) the ALJ's RFC errors improperly tainted the testimony of the vocational expert during the administrative hearing. Because the Court concludes that the ALJ employed the incorrect legal standard in evaluating whether Chavez satisfied Listing 12.05C and will have to reexamine Dr. Loescher's opinion on remand in connection with performing the correct analysis, the Court does not reach Chavez's other assignments of error.

#### A. <u>Step-Three Determination</u>

Listing 12.05C mandates a finding of disability where the plaintiff proves "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05C. To qualify, Chavez must prove not only that her intellectual impairment "me[t] all of the specified medical criteria," but that she also displayed "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested . . . before age 22" as encompassed in Listing 12.05's so-called capsule definition. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009). "An impairment that manifests only some of [the Listing's] criteria, no matter how severely, does not qualify." *Id.* In determining whether a plaintiff satisfies a Listing, the ALJ may consider only medical evidence. *See* 20 C.F.R. § 404.1526(b). Moreover, the ALJ must

"set out specific findings and . . . reasons for accepting or rejecting evidence at step 3." *Clifton v. Charter*, 79 F.3d 1007, 1009 (10th Cir. 1996). Here, the parties do not dispute that Chavez's full-scale IQ score falls within the range. Thus, the dispute focuses on whether Chavez satisfied the capsule definition and proved she suffered from a qualifying "other mental health impairment" in addition to her low quotient score.

### 1. Capsule definition

The Commissioner argues that "[s]ubstantial evidence supports a finding that [Chavez] did not have significantly subaverage general intellectual functioning with deficits in adaptive functionally initially before 22, as required by the listing." (Doc. 26, p. 6) This contention lacks merit for a simple reason. The ALJ did not make *any* findings as to the capsule definition at all, which means the Court cannot undertake the substantial-evidence inquiry or otherwise analyze the issue in the first place. *See Havenar v. Astrue,* 438 Fed. Appx. 696, 699 (10th Cir. 2011) (explaining that the "ALJ never made any findings regarding the capsule definition, and it would be beyond the scope of appellate review to make such a finding in the first instance") (citing *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007)). For the Court to consider the merits of the Government's argument would require the Court to create "an impermissible post-hoc justification for the ALJ's deficient explanation." *Id.* Because the ALJ did not hold Chavez to the capsule definition, the Court declines to do so for the first time on appeal.

### 2. Other qualifying impairment

The entirety of the ALJ's 12.05C analysis reads:

> Finally, the "paragraph C" criteria of listing 12.05 are not met because [Chavez] does not have a valid verbal, performance, or full scale IQ of 60 through 70 **and** a physical or other mental impairment imposing an additional and significant work related limitation of function.

(AR 19) (emphasis in the original). To the extent the ALJ concluded that Chavez does not satisfy the IQ threshold, the ALJ is incorrect. The parties do no dispute, and the ALJ's decision elsewhere reflects, that Chavez had a full-scale IQ of 61. Nonetheless, the Court construes the ALJ's boldface as emphasizing what follows the coordinating conjunction—the absence of a separate and distinct "mental impairment imposing additional significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05C.

Agency regulations do not define "additional significant work-related limitation of function." The Tenth Circuit, however, has clarified that the inquiry is the same as at step two of the sequential evaluation process where the plaintiff must prove a "severe" impairment. *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). Although the plaintiff is required to establish "more than the mere presence of a condition or ailment," the burden is "*de minimis*" and the condition need not be "independently disabling." *Id.* Under agency guidelines "[a] claim may be denied at step two only if the evidence shows that the individual's impairments . . . do not have more than a minimal effect on the person's . . . mental ability(ies) to perform basic work activities." SSR 85-28, 1985 WL 56856, *3. Moreover, "[i]f such a finding is not clearly established by medical evidence . . . adjudication must continue through the sequential evaluation process." *Id.* In this case, Chavez claims that her depression satisfies this standard.

Applying Tenth Circuit precedent and agency guidance, ALJ O'Melinn's analysis of Listing 12.05C is deficient. The ALJ's single-sentence discussion did not consider depression as Chavez's other qualifying impairment, let alone mention or discuss Dr. Loescher's diagnosis of depressive disorder; assignment of Global Assessment-of-Functioning score of 50, which suggests serious impairment in social, occupational, or school function, such as inability to keep a job; and opinion that Chavez had moderate limitation in the ability to carry out simple instructions. (AR 247). Although the ALJ did consider Chavez's anxiety and depression in

combination when independently evaluating whether those conditions were severe at step two, the ALJ misapplied the applicable legal standard, which is reversible error. *See Hendron*, 767 F.3d at 954. Contrary to the ALJ's assertion that Chavez must show her "depression or anxiety, singly or in combination, are disabling conditions preventing her from working on a regular and sustained basis," the second-step analysis ends *only* if the medical evidence "clearly establishes" Chavez's depression does no more than minimally interfere with her ability to perform basic work activities. *See* SSR 85-28, 1985 WL 56856, *3. In other words, the ALJ held Chavez to a much more stringent burden—proof that her depression precluded sustained work rather than the "*de minimi*s" showing of something more than "minimal interference" with "work activities." *Id.*

Even had ALJ O'Melinn applied the correct burden, Dr. Loescher assessed Chavez as moderately limited in her ability to carry out simple instructions. *Accord* SSR 85-28, 1985 WL 56856, *3 (explaining that at step two that basic work activities include "understanding, carrying out, and remembering simple instructions.") *Id.* This piece of medical evidence by itself suggests that Chavez met the step-two severity requirement. When fashioning Chavez's RFC, the ALJ acknowledged—and even purported to give some weight to—Dr. Loescher's assessment, including Chavez's GAF score of 50, which the ALJ conceded "indicates serious symptoms or serious difficulties functioning." (AR 21). Even though the ALJ did not ultimately include Dr. Loesher's limitations in the RFC for reasons known only to the ALJ, Dr. Loescher's assessment still had value under the "*de minimis*" proof standard applicable to the other-qualifying-impairment prong of Listing 12.05C.[3] *See Hinkle*, 132 F.3d at 1352 (explaining that

---

[3] The Court is cognizant that *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005) allows the Court to examine the ALJ's findings at steps four and five to determine whether a failure to give supported reasons at step three constitutes "harmless error." The Commissioner makes this argument in defending the ALJ's decision. The Court does not find it persuasive here for the reasons stated above—the ALJ did not make "thorough" and "clear" findings as to what part of Dr. Loescher's opinion he gave some weight and if the weight he gave to the opinion included accepting the GAF score or the moderate limitations on simple instructions, why those assessments would not satisfy 12.05C's "*de minimis*" burden for proving another qualifying impairment. More generally, the ALJ does not offer any legitimate reason tied to the applicable regulatory factors for rejecting the portions of Dr. Loescher's

"step four requires a more detailed analysis . . . than is required at step two as the ALJ must specifically analyze the impact the impairments have on the claimant's ability to do the work he has previously done).

There may have been reasons to disregard Dr. Loescher's opinion in analyzing the severity of Chavez's depression under Listing 12.05C, but the ALJ was required to set out specific findings when evaluating step three. The ALJ did not do so, and the Court remands the matter for the ALJ to apply the correct legal standard and make specific findings as required.

## IV.  CONCLUSION

For the reasons stated above, the ALJ erred in evaluating whether Chavez satisfied Listing 12.05C at step three of the sequential analysis. **IT IS, THEREFORE, ORDERED** that Chavez's motion to remand (Doc. 24) is **GRANTED** and the case is **REMANDED** to the agency for additional proceedings consistent with this order.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent

---

opinion that led to the assignment of only some weight, even assuming the Court could follow the ALJ's reasoning. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (requiring the ALJ to consider "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion") (citing 20 C.F.R. § 404.1527)). Thus, harmless error does not save the ALJ's deficient analysis at step three.